IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LI PENG YI,

        Petitioner,

v.                                                 No. 21-cv-573 JB/GJF

ATTORNEY GENERAL,
SECRETARY OF HOMELAND SECURITY,
ICE FIELD OFFICE DIRECTOR FOR THE
EL PASO FIELD OFFICE,
and WARDEN OF OTERO COUNTY
PROCESSING CENTER,

        Respondents.

## RESPONDENTS' RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner Li Peng Yi filed his *pro se* Petition for Writ of Habeas Corpus on June 22, 2021. *See* Doc. 1. On June 25, 2021, the Court ordered Respondents to respond within 23 days of entry of the Order. *See* Doc. 3. Respondents hereby file this response.

Petitioner, who was convicted of smuggling goods from the United States and violating the Export Control Reform Act, seeks immediate release from custody to stay at his friend's house pending his removal to China. Petitioner contends that Immigration and Customs Enforcement ("ICE") is unable to remove him. However, ICE anticipates it will remove Petitioner to China within the next two weeks, given that COVID-19–related travel restrictions have loosened and Petitioner's Chinese passport is still valid.

Because Petitioner's removal is significantly likely to occur in the reasonably foreseeable future, his petition should be dismissed.

## STATEMENT OF FACTS

1.       Petitioner is a native and citizen of China. Doc. 1 ¶ 6.

2. Petitioner was admitted to the United States at Honolulu, Hawaii, as a non-immigrant visitor on August 21, 2019. Declaration of Enrique Rojas, attached as Exhibit A, ¶ 5.

3. On June 9, 2020, Petitioner pleaded guilty to smuggling goods from the United States in violation of 18 U.S.C. § 554 and violating the Export Control Reform Act in violation of 50 U.S.C. § 4819. *United States v. Pengyi Li*, No. 1:19-cr-02877-KWR, Doc. 38, at 2.[1]

4. According to the plea agreement, Petitioner knew that he was required to have an export license from the U.S. Department of Commerce to export Aeroflex UT28F256QLE Radiation-Hardened microchips but attempted to illegally export them without the required license. *Id.* at 3-5.

5. On August 27, 2020, Petitioner was sentenced to 12 months and 1 day of imprisonment, to be served concurrently. *United States v. Pengyi Li*, No. 1:19-cr-02877-KWR, Doc. 49, at 3. Judge Riggs recommended that ICE begin removal proceedings during service of sentence. *Id*.

6. On August 28, 2020, ICE's Enforcement and Removal Operations ("ERO") division served Petitioner with a notice to appear and took him into custody at the El Paso Processing Center in El Paso, Texas, to await his immigration hearing. Ex. A ¶ 9.

7. Petitioner was later transferred to Otero County Processing Center in Chaparral, New Mexico. *Id*. ¶ 10.

8. On September 22, 2020, an Immigration Judge ordered Petitioner removed to China. *Id*. ¶ 11.

---

[1] The Court may take judicial notice of the factual and procedural posture of Petitioner's criminal case. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

9. The order of removal became administratively final on September 22, 2020 because Petitioner waived his right to appeal. *Id.*; *see also* 8 C.F.R. § 1241.1(b) ("An order of removal made by the immigration judge . . . shall become final . . . [u]pon waiver of appeal by the respondent").

10. ICE conducted a 90-day Post-Order Custody Review and on December 13, 2020, advised that Petitioner would not be released from custody because it expected to effectuate Petitioner's removal in the reasonably foreseeable future, and it determined that Petitioner posed a significant flight risk if released. Ex. A ¶ 13.

11. Petitioner was scheduled for removal to China on February 3, 2021 and again on March 17, 2021. However, the airline canceled the flights due to health restrictions by the Chinese government arising out of the COVID-19 pandemic. *Id.* ¶¶ 14-17.

12. Petitioner was scheduled for removal on May 12, 2021, but the operation was canceled because his COVID-19 test results and health declaration forms were not timely received. *Id.* ¶¶ 18-19.

13. ICE conducted a 180-day Post-Order Custody Review and issued a letter on May 24, 2021 advising Petitioner that it had decided to continue his detention because there was a significant likelihood of removal in the reasonably foreseeable future. *Id.* ¶ 20.

14. On June 3, 2021, ERO tentatively scheduled Petitioner for removal. ERO plans to execute Petitioner's removal within the next two weeks and is in possession of Petitioner's valid passport, which expires in December 2022. *Id.* ¶¶ 12, 21, 23.

15. The last removal to China occurred in December 2019, and subsequent removal efforts were unsuccessful due to COVID-19 restrictions. *Id.* ¶ 22. However, commercial flights

have since resumed between China and the United States. *See* COVID-19 Information, *available at* https://china.usembassy-china.org.cn/covid-19-information/ (last visited July 14, 2021).[2]

## LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004). 28 U.S.C. § 2441 authorizes habeas relief only for certain prisoners, including those "in custody under or by color of the authority of the United States" or "in custody in violation of the Constitution or laws or treaties of the United States."

ICE generally removes an individual within ninety days of an administratively final removal order. 8 U.S.C. § 1231(a)(1). During this ninety-day time frame, called the "removal period," detention is mandatory. *See id.* § 1231(a)(2). If ICE does not remove an alien within ninety days, detention may continue if it is "reasonably necessary" to effectuate removal. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); 8 U.S.C. § 1231(a)(6) (providing that an alien inadmissible under 8 U.S.C. § 1182 "*may* be detained beyond the removal period" (emphasis added)).

In *Zadvydas*, the Supreme Court applied the canon of constitutional avoidance in considering the petitioner's Fifth Amendment challenge to his prolonged detention. 533 U.S. at 700. The Supreme Court held that detention for six months is presumptively reasonable under Section 1231(a). *Id.* "After this 6-month period, once *the alien* provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701 (emphasis added). Where there is no significant likelihood of removal in the reasonably foreseeable future,

---

[2] The Court can take judicial notice of the information from this government website for the U.S. Embassy and Consulates in China. *See, e.g.*, *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1297 n.4 (10th Cir. 2017).

the alien should be released from confinement. *Id.*; *see also* 8 U.S.C. § 1231(a)(3) (providing for conditions of release); 8 C.F.R. § 241.5 (same).

The Department of Homeland Security ("DHS") conducts periodic reviews of post-order detainees pursuant to the procedures set forth in 8 C.F.R. § 241.4. DHS is required to conduct a post-order custody review ("POCR") before the ninety-day removal period expires if the alien's removal cannot be accomplished during the removal period. 8 C.F.R. § 241.4(k)(1)(i). In conducting the POCR, officials review the alien's records and all documents submitted by the alien and must inform the alien of the decision. *Id*. § 241.4(h). DHS then decides whether the alien should remain in continued detention pending removal or review of his custody status. *Id*. § 241.4(k)(1)(i). If the alien is not thereafter removed or released from custody, the alien must receive a second review three months later, "or as soon as thereafter as practicable." *Id*. § 241.4(k)(2)(ii).

## ARGUMENT

**I.     Petitioner's Continued Detention Does Not Violate the INA or the Fifth Amendment.**

    **A.     Petitioner Has Not Provided Good Reason to Believe His Removal Is Unlikely to Occur.**

Petitioner contends that his continued post-order detention is unlawful under the Immigration and Nationality Act ("INA") and violates the substantive due process clause of the Fifth Amendment. *See* Doc. 1 ¶¶ 21-25. Although Petitioner's detention exceeds the presumptively reasonable six-month period, this fact alone does not render his detention unlawful. *See Zadvydas*, 533 U.S. at 701; *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008). Petitioner must also "provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only then does the burden shift to Respondents to provide evidence sufficient to rebut that showing. *See id.*

Here, Petitioner has not met the "good reason" standard set forth in *Zadvydas*. Petitioner alleges that at the time he filed the petition, he had been detained for over eight months, and his removal is not reasonably foreseeable due to repeated flight cancellations, presumably resulting from the COVID-19 pandemic. *See* Doc. 1 ¶¶ 12-15. However, Petitioner fails to acknowledge that "[a]ctive and ongoing efforts are occurring worldwide to bring the pandemic under control and allow international travel in the reasonably foreseeable future, and there is no reason to believe that those efforts will prove unsuccessful." *Gao v. Barr*, No. 6:20-CV-06529 EAW, 2021 WL 630911, at *3 (W.D.N.Y. Feb. 18, 2021). Consequently, numerous courts have rejected COVID-19 travel restrictions as "good reason" absent a specific showing that the restrictions are not just temporary or that removal cannot occur once the restrictions are lifted. *See id*. (holding that the petitioner failed to satisfy his initial burden under *Zadvydas* because "as soon as a flight to China is available, Petitioner can be placed on it"); *see also Jaime F. v. Barr*, No. 19-cv-20706 (ES), 2020 WL 2316437, at *5 (D.N.J. May 11, 2020) (holding that removal was reasonably likely to occur where the petitioner was scheduled for the next available flight to Venezuela, and there were "no impediments to prevent [his] removal as soon as the national quarantine in Venezuela ends"); *Tamas v. Barr*, No. 4:20CV188-MW-MAF, 2020 WL 4756678, at *5 (N.D. Fla. July 20, 2020) (finding that the petitioner failed to meet his burden absent evidence "that a chartered flight from the U.S. would not be possible" despite COVID-19 restrictions); *Shah v. Wolf*, No. 3:20-CV-994-C-BH, 2020 WL 4456530, at *3 (N.D. Tex. July 13, 2020) (rejecting argument that COVID-19 suspension on travel met the "good reason" standard given that the petitioner "ha[d] not identified any impediments to his removal once the travel restrictions are loosened or lifted"), *report and recommendation adopted*, 2020 WL 4437484 (Aug. 3, 2020).

Conclusory allegations unsupported by credible evidence in the record are insufficient to satisfy the "good reason" standard under *Zadvydas*. *See Quang Minh Lien v. Sessions*, No. 18-CV-2146-WJM-SKC, 2018 WL 4853339, at *5 (D. Colo. Oct. 5, 2018) (rejecting unsupported arguments such as "[Petitioner] is unlikely to be deported to Vietnam" and "there is still evidently no indication that travel documents are forthcoming in the near future"). Rather, a petitioner claiming prolonged detention must show more, such as "lack of a repatriation agreement" or that "his designated country will not accept him." *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012).

Here, Petitioner has not offered anything to support his claim beyond mere speculation and conjecture based on repeated flight cancellations in the past. *See* Doc. 1 ¶ 13 (contending that flight cancellations show that "ICE didn't and don't [*sic*] have the ability to send me back to China"); *id*. ¶ 14 (asserting that "the schedules are all going to be impossible for the following months"). Consequently, Petitioner cannot show that his continued detention is unlawful.

### B.   Even Assuming That Petitioner Has Satisfied the "Good Reason" Standard, Respondents Have Presented Sufficient Rebuttal Evidence.

Even assuming Petitioner has provided sufficient evidence to shift the burden to Respondents to show a likelihood of removal, Respondents can meet this burden. ICE is in possession of Petitioner's valid Chinese passport and plans to remove him within the next two weeks now that COVID-19 travel restrictions have loosened.

Because "ICE officials are actively seeking [Petitioner's] removal and there is no indication they will not succeed," his removal is significantly likely to occur in the reasonably foreseeable future. *Abiodun*, 264 F. App'x at 729; *see also Araya v. Guadian*, No. 20-3234-JWL, 2020 WL 7626508, at *6 (D. Kan. Dec. 22, 2020) (holding that the government met its burden under *Zadvydas* "by showing that Cuba has approved Petitioner's repatriation and the airport in

Havana has now opened its operations and is receiving flights from the United States"); *Henry v. Barr*, No. 3:20-CV-01114-C (BT), 2020 WL 6877703, at *4 (N.D. Tex. Oct. 30, 2020) (noting that "the efforts made by the Government to secure travel documents . . . and comply with *Zadvydas* must be viewed through the lens of our present world," in which "the pandemic has delayed essentially everything"), *report and recommendation adopted sub nom. Henry v. Moore*, 2020 WL 6873604 (N.D. Tex. Nov. 23, 2020); *Tekleweini-Weldemichael v. Book*, No. 1:20-CV-660-P, 2020 WL 5988894, at *5 (W.D. La. Sept. 9, 2020) (holding that a travel document and ICE's indication that the petitioner would be removed on the next charter flight "would be sufficient for rebuttal"), *report and recommendation adopted*, 2020 WL 5985923 (W.D. La. Oct. 8, 2020). Therefore, the Court should conclude that Petitioner's continued detention is reasonable and does not violate the INA or his right to substantive due process under the Fifth Amendment. Dismissal of the First and Second Causes of Action is therefore appropriate.

**II.     Petitioner Has Not Shown a Violation of Procedural Due Process.**

Petitioner also alleges that under the Fifth Amendment's due process clause, he "is entitled to a timely and meaningful opportunity to demonstrate that s/he should not be detained" but "has been denied that opportunity." Doc. 1 ¶ 27. However, Petitioner has failed to present any relevant facts or arguments to support his claims of procedural violations. For example, Petitioner has not explained why the reviews conducted by ICE pursuant to 8 C.F.R. § 241.4 were inadequate. Therefore, this Court cannot meaningfully consider these claims. *Bokole*, 2019 WL 2024922, at *6 (declining to consider procedural due process argument that was not sufficiently raised).

Moreover, there is no requirement that a hearing be held after six months of post-order detention. *See, e.g.*, *See, e.g.*, *Quintana Casillas v. Sessions*, No. CV 17-01039-DME-CBS, 2017 WL 3088346, at *6 & n.7 (D. Colo. July 20, 2017) (noting that when an alien is detained under 8 U.S.C. § 1231(a)(6), the government "is not required to refer [the petitioner] to an immigration

8

[judge] for a bond hearing," and that bond is available under Section 1231 only if the alien's removal is stayed because her testimony is required in a prosecution); *accord Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020) ("[A]liens detained under § 1231(a) do not have a right to a bond hearing."); *see also* 8 C.F.R. § 241.4 (describing procedures for DHS to conduct POCRs at the 90-day, 180-day, and 18-month marks, but not requiring any hearing).[3]

To be sure, the Third and Ninth Circuits have held that bond hearings are implicitly required under 8 U.S.C. § 1231(a) when detention lasts beyond the presumptively reasonable six-month period and release or removal is not imminent. *See Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 226 & n.15 (3d Cir. 2018); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020), *petition for cert. filed*, No. 20-322 (U.S. Sept. 4, 2020). These courts also held that the regulations promulgated by the Department of Homeland Security after *Zavdyvas*, which set forth how the agency conducts POCRs, are not entitled to deference under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

Although the Tenth Circuit has not staked out its position on this issue, it has held that one of these regulations, 8 C.F.R. § 241.14, is entitled to *Chevron* deference. *See Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1256 (10th Cir. 2008); *accord Quintana Casillas*, 2017 WL 3088346, at *7 (granting *Chevron* deference to 8 C.F.R. § 241.13). Furthermore, in the most recent Court of Appeals decision on this issue, the Sixth Circuit split from the Third and Ninth Circuits in concluding that there is no constitutional entitlement to a bond hearing for prolonged post-order detention. *See Martinez*, 968 F.3d at 564. It is therefore far from a foregone conclusion that the Tenth Circuit would join the Third and Ninth Circuits in recognizing an implicit requirement for

---

[3] A hearing is required if continued detention is sought under 8 C.F.R. § 241.14, which applies when there is no significant likelihood of removal in the reasonably foreseeable future. The government has not invoked this provision with respect to Petitioner.

9

bond hearings under 8 U.S.C. § 1231(a)(6). *See, e.g.*, *Garcia Uranga v. Barr*, No. 20-3162-JWL, 2020 WL 4334999, at *8 (D. Kan. July 28, 2020) (declining to require procedural protections beyond those set forth in 8 C.F.R. § 241.4, including a neutral decisionmaker, and citing numerous cases to support its reasoning); *Ofori v. Holder*, No. CV 12-1131 JCH/LAM, 2013 WL 12335263, at *3 (D.N.M. Feb. 22, 2013), *report and recommendation adopted*, 2013 WL 12333994 (D.N.M. Mar. 20, 2013) (rejecting procedural due process claim where the petitioner did not allege that ICE failed to comply with 8 U.S.C. § 241.4); *Mafukidze v. Gonzales*, No. CIV 07-871-W, 2008 WL 395411, at *4 (W.D. Okla. Feb. 11, 2008) (same).

The Court should be "reluctant to graft a bond-hearing requirement onto a statute absent language supporting such a requirement." *Martinez*, 968 F.3d at 566. In deciding *Zadvydas*, the Supreme Court "offered [courts] a standard through which to judge indefinite-detention cases" that does not include any requirement for a bond hearing. *Id*. If the Court were to require a hearing, "it would impermissibly allow Petitioner to bypass the special, centralized review procedures that the immigration agency promulgated in response to *Zadvydas*." *Quintana Casillas*, 2017 WL 3088346, at *10.

Because the Tenth Circuit does not require a hearing under these circumstances, the Court should decline to order one by an immigration judge or conduct its own hearing. *See, e.g.*, *Mwangi*, 465 F. App'x at 787-88 (denying request for evidentiary hearing because, *inter alia*, the petitioner had not shown any entitlement to relief); *Bokole*, 2019 WL 2024922, at *6 (noting that "it's not obvious that the only acceptable procedure to protect that interest [in being free from continued detention] is a custody hearing before either an immigration judge or this Court"). Where, as here, there is no contention that the government failed to comply with the procedures set forth in 8 C.F.R. § 241.4, Petitioner cannot show any procedural violation. *Ofori*, 2013 WL 12335263, at

10

*3; *see also Mafukidze*, 2008 WL 395411, at *4 ("Because the record indicates ICE has made an individualized determination regarding the continued custody of Petitioner and the reasonable foreseeability of his removal, Petitioner's procedural due process claim is without merit."). The Court should therefore dismiss the Third Cause of Action alleging a procedural due process violation.

### III.   Petitioner's EAJA Request Is Premature and Unsupported.

The Court should deny Petitioner's request for costs and attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See* Doc. 1 at 9. At this time, his request is premature because the statute requires an application for EAJA fees be submitted only after a final judgment. 28 U.S.C. § 2412(d)(1)(B) (application for fees and other expenses must be submitted within thirty days of final judgment); *see also Zia Hospice, Inc. v. Sebelius*, 793 F. Supp. 2d 1289, 1301 (D.N.M. 2011). Nor has Petitioner alleged, much less established, that he is a prevailing party or that Respondents' position is not substantially justified. 28 U.S.C. § 2412(d)(1)(A), (B).

### CONCLUSION

The petition should be dismissed because Petitioner has not met his burden under *Zadvydas* to show that his continued detention is unreasonable. Although Respondents are not required to put forward any evidence, they have gone beyond their burden and established a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Because there is no statutory or constitutional right to a hearing, Petitioner cannot prevail on his procedural due process claim. For the reasons stated, Respondents respectfully request the Court dismiss the Petition for Writ of Habeas Corpus in its entirety and deny Petitioner's request for fees and costs under the EAJA.

Respectfully Submitted,

FRED J. FEDERICI
Acting United States Attorney

*/s/ Christine H. Lyman 7/15/21*
CHRISTINE H. LYMAN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1532; Fax: (505) 346-7205
Christine.Lyman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2021, I served the foregoing Response in Opposition to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by first class mail on Petitioner at the following address:

Li Peng Yi
Otero County Processing Center
26 McGregor Range Rd
Chaparral, NM 88081

*/s/ Christine H. Lyman 7/15/21*
CHRISTINE H. LYMAN
Assistant United States Attorney